UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTRELL VONIQUE BROWN,

                        Plaintiff,                           Case No. 1:20-cv-469

v.                                                           Honorable Paul L. Maloney

JUST DETENTION INTERNATIONAL et al.,

                        Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.
Plaintiff filed this action in the United States District Court for the Eastern District of California,
which transferred the action *sua sponte* to this Court. (ECF No. 7.) Following transfer, this Court
severed claims against Defendants for whom personal jurisdiction in Michigan does not appear to
exist and transferred claims against those Defendants to the United States District Court for the
Central District of California. (ECF No. 16.)

        At this juncture, the Court reviews the claims against the remaining Defendants.
The Court is permitted, at any time, to drop parties *sua sponte* under Federal Rule of Civil
Procedure 21 when the parties have been misjoined. Pursuant to that Rule, the Court will drop as
misjoined Defendants Washington and Carlson.

        With regard to the Defendants that remain, the Prison Litigation Reform Act, Pub.
L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) requires the Court to dismiss any prisoner action
brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which
relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28

U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Defendants the State of Michigan and the Michigan Department of Corrections as immune.  The Court will further dismiss Plaintiff's complaint as frivolous.

<u>Discussion</u>

**I.      Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  Plaintiff sues Just Detention International (JDI) and JDI hotline operative Unknown Party #3.  Plaintiff further sues the State of Michigan, the MDOC, MDOC Director Heidi Washington, and Prison Rape Elimination Act (PREA) Manager C.J. Carlson.

Plaintiff's 145-page amended complaint is almost completely devoid of factual allegations, and those allegations he does provide are muddled and unclear.  Plaintiff alleges that JDI is an entity based in Los Angeles, California, that receives government contracts and other support to operate hotlines.  Plaintiff asserts that the State of Michigan has a contract with JDI although he fails to provide any further detail about the putative contract.  What the Court knows of JDI, it has gleaned from the factual allegations.  Apparently, prisoners can use JDI hotlines to report sexual assault, or, for victims of past sexual assault, to discuss their experiences.

Plaintiff used the hotline for some time, but his interactions with JDI began souring in late October 2018.  On October 26, 2018, Plaintiff "read a letter sounding off on government

[and] cowardice Americans." (Am. Compl., ECF No. 14, PageID.93.) Plaintiff alleges that "the hardships started" several days later. (*Id.*, PageID.94.) He asserts a JDI operator "played the fake European concern game, while stating they could not help me, [and] cited limited resources . . . ." (*Id.*)

In the weeks following, the relationship apparently devolved and "Plaintiff became a vocal opponent of [JDI]." (*Id.*, PageID.54.) Plaintiff alleges that on December 3, 2018, he "sounded off on" a JDI hotline operator "call[ing] them government whores . . . ." (*Id.*, PageID.95-96.)

At times, Plaintiff asserts that he had "beautiful exchange[s]" (*id.*, PageID.98) with hotline operators. When Plaintiff called the hotline, he often requested specified operators. Plaintiff alleges that on some occasions, however, "the system fed [Plaintiff] a pervasively heavy dose of" specific operators that "were the worst bitches JDI possessed . . . ." (*Id.*, PageID.100-101.) On December 18 and 19, 2018, Plaintiff twice read a letter to hotline operators. Plaintiff does not describe the contents of the letter, but he asserts that he directed it at all JDI counselors. After reading the letter on December 19, Plaintiff was informed that JDI would permit only three calls each day going forward. At some point afterward, Plaintiff alleges that during three conversations he "scolded [a hotline operator and] JDI about assisting the government . . . ." (*Id.*, PageID.117-118.) On several occasions hotline operators hung up on Plaintiff. Plaintiff alleges that he "stop[p]ed calling JDI to investigate its conduct." (*Id.*, PageID.127.) He "monitored" the hotline calls of other prisoners, but operators did not act the same way toward other prisoners as they did toward Plaintiff. It appears that Plaintiff continued to have hostile interactions with JDI until late March 2019.

The final pages of the complaint turn abruptly toward Plaintiff's grievances with the MDOC and its personnel for conduct that he contends started in 2004. Yet, his factual allegations appear to begin in November 2019 and continue through the COVID-19 pandemic in 2020. As with the assertions involving JDI, Plaintiff's allegations are almost exclusively unsupported legal conclusions. The facts that he does allege include that, while in segregation, he was been denied access to monthly meetings, video conferences, vitamins, and other unspecified special privileges that other housing units receive.

Plaintiff's asserts assorted claims for relief. Plaintiff alleges he was targeted by "pervasive conspiracies" (Am. Compl., ECF No. 14, PageID.25). He further alleges wire fraud, breaches of contract, and violations of antitrust law and of the Fourteenth Amendment's Equal Protection Clause. However, he does not connect any factual allegations to his conclusions. He simply asserts, for example, that JDI and the State of Michigan discriminate based on "race[,] religion[,] class[,] disability[,] political philosophy[, and] unfavorable dissent." (*Id.*, PageID.47.)

Throughout the complaint, Plaintiff inserts offensive name-calling and needlessly insults Defendants. In addition to the language specified above, Plaintiff refers to JDI Defendants as "illiterate," "feminist bitches," "poisoned bitches," and "whores."

Plaintiff offers a long list of the relief he seeks including immediate release, placement in a low security federal institution if not immediately released, deportation, punitive damages, treble damages, injunctive relief, declaratory relief, and eradication of health services and mental health services, presumably within the MDOC.

## II.   Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action

as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different

geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person--say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions--should be rejected if filed by a prisoner.

6

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).  To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Defendant JDI is the first Defendant named in the body of the original complaint (Compl, ECF No. 1, PageID.1, 2) and the amended complaint (*see* Am. Compl., ECF No. 14, PageID.18, 19).  The first 125 pages of the amended complaint appear to exclusively discuss Plaintiff's allegations related to JDI and its employees.  The alleged activity with JDI Defendants occurred through March 2019.  The actions of the other Defendants—that is, the State of Michigan, the MDOC, Washington, and Carlson—are wholly unrelated to the alleged conduct involving JDI and Unknown Party #3 that ended in March 2019.  Defendants the State of Michigan, the MDOC, Washington, and Carlson are therefore misjoined in this action.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845.  Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* Mich.

Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's factual allegations against Defendants Washington and Carlson occurred since November 2018, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Thus, the Court will drop Defendants Washington and Carlson from this action. However, notwithstanding the improper joinder of Defendants the State of Michigan and the MDOC, the Court will retain claims against these Defendants in the instant action. *See Michaels Bldg. Co.*, 848 F.2d at 682 ("The manner in which a trial court handles misjoinder lies within that court's sound discretion.").

Accordingly, because Plaintiff's claims against Defendants Washington and Carlson are misjoined and not at risk of being time-barred, the Court will dismiss without prejudice Plaintiff's complaint against them. The Court, however, declines to dismiss Defendants State of Michigan and the MDOC for misjoinder; the Court will review claims against Defendants State of Michigan and the MDOC in this action.

## III.    Immunity

Plaintiff may not maintain a § 1983 action against either the State of Michigan or the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not

expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Furthermore, in numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (either in its own capacity or acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the State of Michigan and the MDOC.

## IV.    Frivolity

Even if Plaintiff's claims against Defendants State of Michigan and the MDOC were not barred by sovereign immunity, the claims against them, like the claims against remaining Defendants JDI and Unknown Party #3, must be dismissed as frivolous. An action may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brown v. Bargery*, 207 F.3d 863, 866 (2000); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzk*e, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. An *in forma pauperis* complaint may not be dismissed, however, merely because the court believes that the plaintiff's allegations are unlikely. *Id.*

10

In this case, the Court is completely unable to discern what facts or claims Plaintiff seeks to present in his sprawling complaint.  While the complaint itself is generally legible, the words often do not always form coherent sentences, nor do they convey clear thoughts.  The first 75 pages of the complaint are largely just legal conclusions and a variety of legal labels.  The crux of the complaint appears to be Plaintiff's challenge to restrictions placed on the hotline.  Yet, despite the legal terms, the few factual assertions do not clearly connect to any claim for relief.  Indeed, Plaintiff's own allegations suggest that hotline operators may have been less enthused to take his calls because he routinely berated them and called them whores.  The allegations, as presented by Plaintiff, utterly fail to provide enough information to determine whether Plaintiff has sufficiently alleged a plausible claim for relief.

Because the Court is unable to decipher Plaintiff's allegations, his complaint necessarily lacks an arguable basis either in law or fact.  *See Neitzke*, 490 U.S. at 395; *see also Parker v. Parker Int'l/Parker Tobacco Co.*, No. 89-6078, 1990 WL 63523, at *1 (6th Cir. May 11, 1990).  Moreover, Plaintiff's complaint presents a variety of rambling and incoherent claims in violation of the short and plain statement requirement of Fed. R. Civ. P. 8.  Even giving the most liberal construction to Plaintiff's complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is unable to find that the facts asserted allege a cause of action, much less how any particular claim lies against each specific Defendant.  Accordingly, the Court will dismiss the complaint against all remaining Defendants as frivolous.[1]

---

[1] The Court notes that, for purposes of this opinion, it has assumed without deciding that Defendant JDI is a state actor within the meaning of § 1983.  *See West v. Atkins*, 487 U.S. 42, 48 (1988) (holding that, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law); *see also Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

## V.      Pending Objection

Plaintiff filed an objection (ECF No. 13) to a magistrate judge's transfer of this action from the Eastern District of California to the Western District of Michigan.  Under the revised venue statute, venue in federal-question cases lies in the judicial district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b).  Plaintiff has alleged neither that any Defendant resides in nor that any events occurred in the Eastern District of California.  He has alleged that the events giving rise to his claims occurred in Los Angeles, California[2] and Manistee, Michigan.   Under these circumstances, venue was not proper in the Eastern District of California.  At this stage, venue does appear to be proper in either the Western District of Michigan or the Central District of California.  Therefore, transfer to the Western District of Michigan was proper.

To the extent Plaintiff requests the Court recuse itself, his request will be denied. Plaintiff alleges that he filed his action in the Eastern District of California because this Court previously denied him habeas relief and he believes the Court is biased against him.  (ECF No. 13, PageID.12, 14-15.)

In *Liteky v. United States*, 510 U.S. 540 (1994),[3] the Supreme Court described the showing a party would have to make to succeed on a claim of judicial bias:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  *See United States v. Grinnell Corp.*, 384 U.S. at 583.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as

---

[2] As described in the Court's previous order (ECF No. 16), Los Angeles, California, is in Los Angeles County, California, which is in the Central District of California.  *See* 28 U.S.C. § 84(c).

[3] *Liteky* is a case that addresses the statutory recusal standard for federal judges.  The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause.  *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-56.

Plaintiff has alleged bias simply on the Court's prior rulings against him. While Plaintiff asserts that invidious discrimination motivated the Court to previously rule against him, he fails to point to any indicia to substantiate his allegations. His conclusory allegations appear to be based solely on his dissatisfaction with the prior rulings and do not mandate recusal. *See Amadasu v. Mercy Franciscan Hosp.*, 515 F.3d 528, 530 (6th Cir. 2008); *Rodman v. Dalton*, No. 88-3303, 1989 WL 16960 (6th Cir. 1989) (citing *Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir. 1980)). Accordingly, the Court will deny Plaintiff's objections.

## VI.    Pending Motion

Plaintiff has also filed a motion requesting leave to file a second amended complaint that, with the motion, is 193 pages in length including all attachments. (ECF No. 15.) Plaintiff's motion is governed by Federal Rule of Civil Procedure 15 which provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so

requires." FED. R. CIV. P. 15(a).  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182.  If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

In this instance, Plaintiff's attempt to amend the complaint is futile for several reasons.  First, Plaintiff has already been advised (*see* ECF No. 12) that he must file a complaint using the form provided by this Court.  *See* W.D. Mich. LCivR 5.6(a).  Yet, Plaintiff failed to file his proposed second amended complaint on the requisite form.  Neither did he substantially follow the form.  Instead, Plaintiff's proposed second amended complaint provides only a case caption before leaping immediately into new factual allegations against the MDOC and its personnel that appear to begin in November 2019 and early 2020, largely where the first amended complaint ended.  As a consequence, the Court is unable to discern whether Plaintiff intends to bring his suit against the same parties as in the first amended complaint or whether, for example, he intends to drop all claims against JDI and its staff.  After all, Plaintiff does not appear to allege any conduct by JDI or its staff in his proposed second amended complaint.  The requirement of Local Civil Rule 5.6(a) aims, in part, to alleviate such problems, but Plaintiff did not comply with the rule.  As a result, the Court is unable to determine the parties and the exact scope of the proposed second amended complaint.

Even assuming that Plaintiff intends to simply *add* claims against the Defendants he named in the first amended complaint, his motion to amend the complaint would nonetheless

remain futile.  For the same reasons that the Court dropped Defendants Washington and Carlson under Rule 21 as misjoined, the new claims Plaintiff proposes would again be misjoined.  The conduct Plaintiff describes in his proposed second amended complaint occurred well after the allegations involving JDI and its staff, and the Court is unable to find any transaction or occurrence in common with JDI and Unknown Party #3.  Thus, Plaintiff's proposed amendment to the complaint is futile.  Accordingly, the Court will deny his motion.

## VII.    Abusive and Offensive Language

The Sixth Circuit regularly has approved the imposition of prefiling restrictions on plaintiffs who continuously file abusive litigation.  "While this court cannot absolutely forbid an individual from initiating an action or pursuing an appeal in federal court, *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996), the court may impose pre-filing restrictions on an individual with a history of repetitive or vexatious litigation."  *Shephard v. Marbley*, 23 F. App'x 491, 493 (6th Cir. 2001) (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); *Ortman*, 99 F.3d at 811).

Plaintiff was previously directed that he must refrain from needless name-calling when it ordered him to file an amended complaint.  (ECF No. 12, PageID.9.)  Ignoring this order, Plaintiff filed an amended complaint in which he referred to Defendants using offensive and distasteful language.  Because Plaintiff has ignored the direction of the Court, he is now warned that the Court may dismiss, at its discretion and without notice, any future case in which he files a pleading or motion with gratuitously offensive language.

The Court further notifies Plaintiff that his practice of filing 150-page complaints containing conclusory language and naming misjoined Defendants and claims is abusive and inhibits proper review of his complaints.  Plaintiff is warned that, if he continues to file such

complaints, the Court may impose further filing restrictions on Plaintiff's future complaints, such as placing a page limit on those complaints.

## Conclusion

Having conducted the review under Federal Rule of Civil Procedure 21, the Court determines that Defendants Washington and Carlson will be dropped from this action. Plaintiff's claims against them will be dismissed without prejudice.

Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against the remaining Defendants will be dismissed as frivolous, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also deny Plaintiff's pending objection (ECF No. 13) and pending motion (ECF No. 15).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court discerns no good-faith basis for an appeal.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment and order consistent with this opinion will be entered.


Dated:   August 10, 2020\                      /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge